Plaintiffs, the widow and children of T.T. Sandefur, instituted this suit against the Avoyelles Trust and Savings Bank and the Sheriff, claiming the ownership of four mules alleged to have been seized by the Sheriff under a writ of sequestration issued in suit No. 11,209 of the Twelfth Judicial District Court for Avoyelles Parish, Louisiana, entitled Avoyelles Trust and Savings Bank v. E.B. Sandefur. Plaintiffs alleged the mules were in their possession at the time of the death of T.T. Sandefur and prior thereto for several years, and were never the property of E.B. Sandefur, the seized debtor of said Bank, and were not liable for his debts; that the mules were purchased by T.T. Sandefur, a number of years prior to his death, and always remained in his possession up until his death and in the plaintiffs' possession, uninterruptedly and publicly, as owners until the date of the seizure in the above numbered and styled suit.
Plaintiffs further alleged that the Bank refused to release the mules, thereby forcing the plaintiffs to seek redress through the courts and thereby damaging them in the sum of $100 for attorney's fees and $25 for loss of use of the mules.
Defendants answered admitting the seizure and alleged the mules were the property of E.B. Sandefur and subject to seizure under a chattel mortgage on said mules given to the Bank by E.B. Sandefur. They denied they had damaged plaintiffs in any amount.
Plaintiffs further alleged that they feared the Bank and the Sheriff in the proceedings above referred to would cause the sale of the mules to their irreparable injury and that they are entitled to an injunction prohibiting and enjoining any further proceeding until a final decision in this suit. They prayed for a rule nisi and upon trial of the rule that a preliminary injunction issue, and on trial on the merits that the injunction be made permanent. The rule nisi issued and defendants were ordered to show cause on September 26, 1941, why an injunction should not issue as prayed for.
The rule was not tried until October 17, 1941, at which time the rule and trial on the merits were had at the same time and on November 21, 1941, the lower court rendered judgment rejecting plaintiff's demands. It is from that judgment plaintiffs are prosecuting this devolutive appeal.
Since no suspensive appeal was prayed for or granted, the Sheriff proceeded to sell the mules, therefore, the only question presented us for determination is:
Have plaintiffs established ownership in themselves of the mules?
We might mention here now that only three mules were seized and sold, the fourth *Page 81 
mule covered by the chattel mortgage is shown to have died on or before the date of seizure.
T.T. and E.B. Sandefur were brothers. T.T. was a man of family and E.B. Sandefur was an old bachelor. He is now in his late seventies. The two brothers were very close. E.B. lived with their mother until her death and thereafter made his home with T.T. Sandefur. They had lived together for many years before T.T. departed this life. They were partners in almost all of their dealings. T.T. Sandefur operated the farm and E.B. engaged in the logging business. The funds derived from both businesses were deposited in the Bank in the account of "E. and T. Sandefur" and either of them was authorized to draw against the account at will. The two brothers apparently had a deep affection for each other. E.B. did not pay any board for the reason the funds of the partnership were used to provide for him, T.T. and his family.
We feel sure that if T.T. Sandefur were living, this suit would not be in the courts, but, unfortunately, he is dead and there has been a falling-out amongst his widow, children and his brother and through this the memories of that fine, beautiful relationship existing between the two brothers have been forever spoiled. However, as unpleasant as it may be, it is the duty of the Court to determine the issues presented by application of the cold letter of the law to the facts as proved by the evidence.
Plaintiffs alleged that T.T. Sandefur purchased the mules in question several years before his death. Not one word of testimony is in the record that he ever purchased the three mules under seizure. To the contrary, there is the testimony of E.B. Sandefur and his two logging partners that the three of them went to Baton Rouge in the early part of 1933 and bought nine mules, three for each; and that the money to pay for the mules was secured from the company they were logging for at the time, $1,800 in all. That E.B. Sandefur purchased and paid for the three identical mules involved in this suit; and that the mules were taken from Baton Rouge to the point of logging and used in logging purposes until the fall of the year, when each of the three partners took his mule home. E.B. Sandefur took the three mules which had been seized to his home, which was the home of T.T. Sandefur. From the fall of 1933 until the date of seizure the mules remained on the farm and were used with the other mules on the place for farm work. When they were not needed on the farm, E.B. would take them and use them in his logging operations. On several occasions he used other mules from the farm for logging, and why not? The profits he had out of logging went into the general fund kept by him and T.T. Sandefur. He used these mules every year in his logging operations up until 1939. In 1938, some misunderstanding arose between T.T.'s family and E.B. Sandefur and he moved off the place. He did not move his mules but kept them there. T.T. Sandefur had died in June, 1937.
It was on August 15, 1937, that E.B. Sandefur gave a chattel mortgage to the Bank on the three mules in question. It is his contention that he did not include any other mules in the mortgage because he did not own the others outright. However, he does claim that he owned a half interest in all other live stock, machinery and tools on the farm. He is not making any claim to anything but the three mules. He states that he left the mules on the farm when he moved away for the reason he did not have any need for them and saw no reason to move them.
The only reason we could give for holding that the three mules were owned by plaintiffs would be that they have been on their place for many years, but when we take into consideration all the other facts and the fact that up until June, 1938, the place owned now by plaintiffs was also E.B. Sandefur's home, then that reason would be without merit. The mere fact that E.B. Sandefur did not take the mules with him when he moved away is not sufficient to vest ownership in plaintiffs. E.B. Sandefur bought the mules and paid for them and used them when he wished up until 1939. There is no evidence that he ever sold them to his brother or plaintiffs or that he ever gave them to either of them. While long possession is strong evidence of ownership, it is subject to explanation and will not stand up when in conflict with direct evidence of ownership in another.
Plaintiffs have clearly failed to establish ownership in themselves of the three mules mortgaged to the Bank by E.B. Sandefur and, without first establishing ownership, they are without interest in attacking *Page 82 
the validity of the mortgage as between the Bank and E.B. Sandefur.
The judgment of the lower court rejecting plaintiffs' demands is correct and it is affirmed, with costs.